John D. Neff, and Mable Neff by her next friend, John D. Neff, *v.* Harrisburg Traction Company, Appellant.

*Negligence—Contributory negligence—Street railways—Getting off car while in motion—Charge of court.*

It is contributory negligence for a passenger to leave a car while it is in motion.

In an action by a passenger against a street railway company for personal injuries sustained while alighting from a car, where the evidence is absolutely contradictory as to whether a passenger left the car while in motion, it is reversible error for the trial judge to charge that if the jury believed the evidence of the railway company's witnesses, they might find for the company.

In an action by a passenger against a street railway company to recover damages for injuries sustained while alighting from a car, where there is no evidence to show that the car was going so slowly as to be substantially stopped when the accident occurred, it is an error to introduce that element into an instruction given to the jury.

Argued May 30, 1899. Appeal, No. 24, May T., 1899, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1898, No. 252, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before SIMONTON, P. J.

Separate actions were brought by the father and by the daughter for a broken arm suffered by the daughter while alighting from defendant's car, November 15, 1897. They were

consolidated and tried together in accordance with the provisions of the Act of May 12, 1897, P. L. 62.

The facts appear by the opinion of the Supreme Court and by the charge of the court below, which was in part as follows:

You have to take the testimony then and consider it carefully and find what is the truth of the matter.    Is the account of the accident given by the plaintiff, and by her sister, and by one other witness (so far as it corroborates them) the correct version of the case?    Had the car come to a stop before the plaintiff and her sister went out to the platform and undertook to get off, and at the time that the plaintiff was about stepping down to get off did the car start with so much of a jerk, or so much of a suddenness or violence, as to throw her off?    If that was the case, then you might find little difficulty in coming to the conclusion that the defendant was negligent and that the plaintiff was not.    If the car had stopped, the plaintiff might have a right to suppose that it would remain standing until she could get off.    [On the other hand, if that is not the true version, if the car had not stopped, and if the plaintiff was thrown off because she undertook to get off before the car had come to a stop, then you might ascertain that she ought to have waited and that the defendant had done nothing out of the way, nothing but what is done on all occasions;] [1] for if the car had not yet come to a stop the time had not arrived for the plaintiff to get off.

You are the judges of the credibility of witnesses; you are to ascertain, where there is a conflict of testimony, what the facts are; that is especially the province of the jury, and it is one that the court is not bound to meddle with, and not obliged to take any responsibility for; it is for the jury.    You heard these witnesses on the one side and on the other, you heard what they said, you saw the manner in which they testified, you can judge from their language and their manner and the statements that they made, what opportunity they had for knowing what really did occur; and you are also to consider, so far as it enters into the case, the bias, if you find any, or the interest, that one witness or another has in the result of the suit.    The plaintiff has a direct money interest in it; there is no question about that; the conductor and the motorman may have or may not have

pecuniary interest in it; the conductor in this case testified, and it is not disputed, that he is not now in the employ of this company; that he has another job; there was nothing said on that point, I think, as to the motorman, nor did I hear any suggestion that the motorman had done anything that he ought not to have done, unless it be assumed (if the car started suddenly) that he did that.    You are to consider that whole matter and determine what the truth is between these parties on the one side or on the other, for the case practically depends on that.    If you take the version that is given by the plaintiff, you might very well find a verdict in favor of the plaintiff, [and if you take the version given by the defendant, that the car had not yet come to a stop when the plaintiff undertook to get out, then you might find her guilty of contributory negligence, and in that case she would not be entitled to recover.] [2]

Plaintiff's point and the answer thereto were as follows :

1. If the jury believe that when Mable Neff attempted to alight the car had stopped, or was in the act of stopping, or was in such a condition of running or stopping as induced her to think it had stopped or was about to stop, then she had a right to get off, and if the car was negligently operated, and the injury resulted therefrom, then the verdict should be for the plaintiffs. *Answer :* That is substantially correct. If the car had stopped before she began to get off, or if it was so near stopped that it was practically stopped, then she would have a right to get off, and if under those circumstances the accident occurred from the negligence of the defendant, she would be entitled to recover. [3]

Defendant's point and the answer thereto were as follows:

1. If the jury believe that the plaintiff, Mable Neff, did not wait for the car to stop, but got off while it was moving, it was negligence on her part which will prevent a recovery, and the verdict must be for the defendant. *Answer :* If she failed to wait until the car stopped, and if it was still moving, unless it was so slightly as to be substantially stopped, and she undertook to get off while it was so doing, she would be negligent, and if she was negligent she would have no right to recover. [4]

Judgment and verdict for John D. Neff for $300, and for Mable Neff for $1,500.

*Errors assigned* were (1–4) above instructions, quoting them.

*C. L. Bailey*, of *Wolfe & Bailey*, for appellant.—It is the duty of a railway company to cause its cars to come to a full stop, and remain stopped for a reasonable length of time to permit passengers to get off: Crissey v. Hestonville, Mantua & Fairmount Ry. Co., 75 Pa. 83. As it is the duty of a railway company to cause its cars to stop, so it is the duty of a passenger, in the absence of exceptional circumstances, to wait until the car has stopped before attempting to alight: Penna. R. Co. v. Aspell, 23 Pa. 147; Victor v. Penna. R. Co., 164 Pa. 195; New York, Lake Erie, etc., R. R. Co. v. Enches, 127 Pa. 316.

If it was the duty of the defendant to stop, it was the duty of the plaintiff in the absence of any exceptional circumstances to wait until the car had stopped, before attempting to alight: New York, Lake Erie & Western R. R. Co. v. Enches, 127 Pa. 316.

*S. S. Rupp*, for appellee.—Detached portions of the charge, and especially only parts of sentences, should not be assigned for error: Penna. R. Co. v. Coon, 111 Pa. 430; Little Schuylkill Nav. R. R. & Coal Co. v. French & Funk, 81* Pa. 366; Irvin v. Kutruff, 152 Pa. 609; Reese v. Reese, 90 Pa. 89; Smith v. Meldren, 107 Pa. 348; Com. v. Zappe, 153 Pa. 498.

Where a judge has expressed himself in such a manner as to be understood by the jury, this Court will not reverse the judgment on critical objections to his language: Galbraith v. Black, 4 S. & R. 207; Penn Mut. Ins. Co. v. Snyder, 3 W. N. C. 269.

Where the court charges substantially as requested, the party requesting cannot afterwards assign such instruction as error: Benson & West v. Maxwell, 105 Pa. 274.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

On the trial of this case two witnesses examined for the defendant testified positively that Mable Neff and her sister left the car while it was in motion and before it stopped. She and her sister testified that they did not leave the car until it stopped, and that it started with a sudden jerk while they were getting off, and that this was the cause of Mable Neff's fall. The witness, Lillian Adams, testified that the Neff girls got off while

the car was moving, and that she herself did not get off till after the car stopped, and she then saw Mable Neff lying on the street where she had fallen.    Kohler testified to the same effect.    He said: "I pulled the door open and I noticed one lady got off the car before it stopped and I seen her take a pitch. . . . Q. It was the first one you say you saw take that pitch?    A. The first lady got off before the car stopped; I seen her take the pitch towards the corner of the house or curb as they call it."

As these witnesses were entirely disinterested there was no reason to disbelieve their testimony.    It was not possible to reconcile their testimony with that of the plaintiff and her sister, because both of them swore positively that the car had stopped before they got off.    It was therefore a matter of prime importance to determine how this disputed fact was, and that determination involved the question of the credibility of the witnesses. The plaintiff was of course directly interested, and her sister naturally sympathized with her.    Miss Adams and Mr. Kohler were disinterested spectators.    If their testimony was believed the plaintiff certainly could not recover.    All our decisions are to that effect.    In Railroad Co. v. Enches, 127 Pa. 316, we said, " We have so often held that it is contributory negligence for a passenger to leave a car while it is in motion that it is unnecessary to discuss that question."    In Victor v. Railroad Co., 164 Pa. 195, we said, " It may be stated as a general proposition that it is negligence on the part of a passenger to alight from a moving train."

It is plain therefore that if the jury in this case believed the testimony of the defendant's witnesses it was their plain duty to return their verdict in favor of the defendant.    Now the learned trial judge in commenting upon this part of the case said to the jury, " And if you take the version given by the defendants, that the car had not yet come to a stop when the plaintiff undertook to get out, then you might find her guilty of contributory negligence, and in that case she would not be entitled to recover."    It is altogether probable from the context that the court did not intend by the use of the word might in this connection, to put, or to intimate, a qualification upon the defendant's right to a verdict in case the jury should find that the plaintiff left the car while it was in motion.    But the literal meaning of the words used in the charge is only that the jury

might find for the defendant in the event stated, and not that they should or must so find in that event. If, however, the jury only might find for the defendant in that contingency, there is a necessary implication that they nevertheless might find for the plaintiff, notwithstanding the plaintiff left the car while it was in motion ; in other words, they would be under no obligation to find for the defendant in case they found that the plaintiff left the car while it was in motion. As there was no proof of any circumstances which constitute an exception to the operation of the rule, it follows that the instruction should have been in the absolute and peremptory form, and not in the qualified and conditional form in which it was presented. The jury would be at liberty to understand from the words of the charge on this subject that the plaintiff's act of leaving the car while it was in motion would be no bar to her recovery in this action.

The portion of the charge covered by the first assignment is amenable to the same criticism, because if the plaintiff did get off the car before it stopped, it was the bounden duty of the jury to decide that she ought to have waited, and it would not be correct to say that they might ascertain that she ought to have waited. The use of the word might in this connection in these two portions of the charge would have a tendency to mislead the jury as to their proper function in the contingencies mentioned, and while we think it was entirely unintentional on the part of the learned judge, and that he did not design to convey a doubtful meaning, yet as the jury might have been misled we feel bound to sustain these two assignments of error.

As there was no evidence to show that the car was going so slowly as to be substantially stopped when the accident occurred we think it was a mistake to introduce that element into the answer to the defendant's point, and we therefore sustain the fourth assignment. We think the point should have been affirmed without qualification, just as it stood. The matter of the third assignment is covered by the same ruling. It is true the matter was introduced into the plaintiff's point, but as there was no evidence to which it could apply, the court should have so said in their answer, instead of affirming the point as it was presented.

Judgment reversed and new venire awarded.