# Margo *v.* Pennsylvania Railroad Company, Appellant, (No. 1).

*Negligence—Railroads—Passenger—Alighting from train—Custom.*

In an action against a railroad company to recover damages for the death of plaintiff's husband, occurring while as a passenger he was alighting from a train, the plaintiff is not entitled to recover where the evidence shows that the train was stopped for a proper railroad purpose at a point about half a mile from the terminal station where the passengers were to change cars, that at this point there were numerous tracks, and within the yard limits; that the deceased without any invitation, or notice from the trainmen, and solely for his own convenience, alighted from the side of the train opposite to where the trainmen were standing, and was thrown under the wheels of the car by the starting of the train, and killed.

In such a case an offer to show a custom of the railroad company to stop its trains at the place of accident for general railroad purposes, and that when trains so stopped passengers frequently got off and on, is inadmissible, where there is no offer to show that the deceased had knowledge of such custom.

When a custom is set up to assert a right or justify an act, the party relying on the custom must show that he had knowledge of it.

Argued Oct. 30, 1905. Appeal, No. 65, Oct. T., 1905, by defendant, from judgment of C. P. Cambria Co., June T., 1904, No. 284, on verdict for plaintiff in case of Annie Margo v. Pennsylvania Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before O'CONNOR, P. J.

The facts are stated in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $2,652.00. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*H. W. Storey*, for appellant.—Where a safe and convenient means of ingress and egress to and from the trains has been provided upon one side of the track, the company has, in this

particular, discharged its whole duty to passengers, and where a passenger alighting on the opposite side is injured by falling into an unguarded excavation, he cannot recover for his injuries : Drake v. Pennsylvania Railroad Company, 137 Pa. 352 ; Penna. R. R. Co. v. Zebe, 33 Pa. 318 ; Ferguson v. Traction Co., 9 Pa. C. C. Rep. 147 ; Kilpatrick v. Penna. R. R. Co., 140 Pa. 502 ; Brown v. Barnes, 151 Pa. 562 ; N. Y., L. E. & W. R. R. Co. v. Enches, 127 Pa. 316.

Custom may be sufficient to control a contract, if there is a uniform, well-established, well-known custom which has continued for so long a time and so uniformly that everybody contracting must be presumed to know that there is such a custom : Corcoran v. Chess, 131 Pa. 356 ; Cope v. Dodd, 13 Pa. 33 ; Jordan v. Meredith, 3 Yeates, 318.

*P. J. Little,* for appellee.—It is the duty of the railroad company to stop its trains at its stations, or at the places where it usually stops, a reasonable time to permit its passengsrs to alight when the car is standing at rest : Penna. R. R. Co. v. Kilgore, 32 Pa. 292 ; Penna. R. R. Co. v. Lyons, 129 Pa. 113 ; Farr v. Phila. & Reading Ry. Co., 24 Pa. Superior Ct. 332 ; Leggett v. R. R. Co., 143 Pa. 39.

OPINION BY MR. JUSTICE ELKIN, January 2, 1906 :

The plaintiff, with her husband, Michael Margo, in company with other companions, were returning from a point on the Cambria and Clearfield division to a place near Kittanning point on the main line of the defendant company. It was necessary for these passengers to change cars at Cresson station in order to make the proper connections to their place of destination. Two special cars were attached to the train to be delivered on the main line. The conductor, for the purpose of securing orders relating to the delivery of these special cars, stopped the train at the office of the superintendent a half mile east of the station, and while awaiting orders at that place, the plaintiff, her husband and their companions, got off the coaches in which they were riding on the south side of the track, opposite to the side where the trainmen were standing, without notice of their intention to get off. The starting of the train jolted or jarred the husband, who was the last of the party to

alight, as he was getting off the steps leading from the platform, and he fell under or near the wheels of the car, receiving injuries resulting in his death. It is clear from the testimony that the husband of plaintiff knew the train had not reached Cresson station and that he attempted to get off at the place of the accident for his own convenience without being misled by any notice or act of the trainmen. The question therefore arises whether under these circumstances, such negligence by the defendant was established, as to permit a recovery in this action. The deceased husband undertook to get off the train while it had temporarily stopped for the purpose mentioned, at a place where there was no station, and where no provision had been made for taking on or letting off passengers. It was nearly a half mile distant from the station to which the deceased as well as all other passengers on the train were going. It was a dangerous place. It was within the yard limit where shifting engines and trains were constantly moving about. Six tracks had to be crossed before reaching the public highway and it not being intended for the accommodation of passengers no crossings or other safeguards were provided. The tickets called for Cresson station, and the conductor and brakemen had a right to presume that passengers would remain in the cars until the train reached and stopped at the station. The testimony does not show, nor tend to show, that the trainmen knew these passengers intended to get off at that place, or that they saw them at the time they undertook to alight. Under these circumstances, about which there is no dispute, the deceased must be held to have assumed any risk incident to his alighting from the train. It is argued that it was the duty of the defendant company to see either that the passengers got off the train safely at that point, or to prevent them from getting off, and if it failed in the performance of its alleged duty in either respect, it can be held liable in damages for injuries resulting therefrom. This is not the rule.

In Penna. Railroad Co. v. Zebe, 33 Pa. 318, Mr. Justice THOMPSON, in discussing the rights of passengers in attempting to get off a train in a manner not provided by the company, said: " The abstract question of their right to do so is one thing and need not be disputed; but the liability of the company by reason of their so doing is quite another thing. It was not

negligence on the part of the company that they did not by force or barriers prevent the passengers from leaving the train on the wrong side."

If it is not the duty of a railroad company to prevent passengers from getting off at the wrong side at a regular station it is less its duty to prevent their getting off not only at the wrong side but at the wrong place, and not intended as a stopping place for passengers.

In Victor v. Penna. Railroad Co., 164 Pa. 195, Mr. Justice FELL said : " The train was stopped in the cut before reaching the station by the engineer for reasons that were wise and under the rules of the company imperative. It was not anticipated by the conductor or brakeman, nor was the reason for it at the time understood by them. They had not announced that the next stop would be Stewart, but that the next station was Stewart, and while they knew that the plaintiff intended to leave the train they had no reason to expect that she would get off until it stopped."

The facts of that case were more favorable to the plaintiff in this respect than are those of the one at bar. In that case prior to the stopping of the train the brakeman had announced, " the next station is Stewart," and, for sufficient reasons, the train temporarily stopped before reaching the station, the plaintiff being injured in attempting to get off. The plaintiff relied on the notice of the brakeman that the next station was Stewart, where she intended to get off, and claimed to have been misled by this announcement. Notwithstanding these facts it was held there could be no recovery.

In the present case it is not contended that Cresson station had been announced, or that the deceased was misled by any notice or acts of the trainmen. On the other hand, the undisputed evidence is that the deceased knew he had not reached Cresson station, but for his own convenience and because his companions and himself desired to get something to eat at the town of Cresson, he attempted to leave the train while it was temporarily stopped. In the light of our authorities, it is difficult to see under what theory a recovery can be permitted under the facts of this case. It is not denied that where passengers get on and off a train at proper places the railroad company owes them the duty of providing safe and convenient ap-

proaches to the train, and it is conceded that under such circumstances it is the duty of the railroad company to stop the train sufficiently long to permit passengers to alight safely. These questions, however, do not arise under the facts of the present case.

The learned court below held, and the counsel for appellee argues here, inasmuch as some evidence was offered relating to a custom of the defendant company to stop its trains at the place of accident for general railroad purposes, and when the trains were so stopped, passengers frequently got off and on, it was a question for the jury to determine whether the defendant was negligent in this case.

It is a sufficient answer to say that the offer of evidence to establish a custom without offering to show that the deceased had knowledge of such custom is inadmissible. When a custom is set up to assert a right or justify an act, the party relying on the custom must show he had knowledge of it : Godcharles v. Wigeman, 113 Pa. 431.

In the present case the facts are undisputed that the plaintiff, her husband and their companions had no knowledge of any such alleged custom, and therefore could not have been misled by it. They had never been at the place except on the previous day. They were not familiar with any custom in reference to getting on and off trains at this or any other point on that division. They knew where the station was located because on the day prior they had changed cars at the station on their way to visit friends. On the day of the accident they were returning by the same route traveled the day before. It is not denied, and could not be, under the evidence, that they knew they were not at the station, and do not claim to have given notice of their intention to get off at that place, or that they had any knowledge of a custom which permitted them to get off at that point, and therefore it is idle to contend that the deceased was misled by the so-called custom.

There are several assignments relating to the contributory negligence of deceased and other grounds of reversible error, the consideration of which is unnecessary, for the reason that what has already been said is fatal to the plaintiff's case.

Judgment reversed.