## Landis v. Colonial Life Ins. Co. of America, Appellant.

*Contracts—Agency—Insurance agents—Construction.*

A contract with an agent for the collection of industrial insurance provided for two kinds of compensation, an ordinary salary of 15 per cent of the agent's weekly collections and a special salary for the net increase of business, through writing new insurance. Under the terms of the contract, the agent agreed to send to the home office, each week, on a proper form a list of all policies upon which four weeks' premiums were due at the time of making up the account, and to be held pecuniarily responsible for the policies lapsed through arrears, in excess of the limit provided by the company. It further provided that on Monday of each week the agent was to be charged with the amount of the weekly premiums shown on the registry list, less the total amount of the weekly premiums on policies which had lapsed. The contract also stipulated that the company was not bound to prove that the agent had received the premiums. Under such circumstances, the agent was entitled to credit for the four weeks' premiums not collected by him, where the defaults in payments resulted in the lapse of the policy, but was chargeable for all premiums due on policies in force at the time of the accounting. Under the terms of the contract he was charged with all the premiums for policies in force on the register, and to allow him to prove that certain premiums had not actually been collected by him, and were not chargeable against him, constituted reversible error.

560, (1920).] Syllabus—Opinion of the Court.

Where the agent accepted business of other agents and entered such collections upon his books, such policies must be treated in the same way as business originally secured by him.

Argued April 30, 1920. Appeal, No. 101, April T., 1920, by defendant, from judgment of C. P. Allegheny County, July T., 1918, No. 521, in the case of Isaac Landis v. The Colonial Life Insurance Company of America. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit to recover commissions of insurance agent. Before COHEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $600 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence and refusal to grant a new trial.

*John G. Buchanan,* and with him *William J. Blakeley* and *Gordon & Smith,* for appellant.

*Lowrie C. Barton,* for appellee.

OPINION BY KELLER, J., July 14, 1920:

This appeal involves the construction of an agent's contract with a life insurance company for the collection of the weekly premiums payable on "industrial" insurance, and the soliciting of new business.

The contract provided for two kinds of compensation. The first, called "ordinary salary," was fifteen per cent of the agent's weekly collections. The second, called "special salary," was allowed the agent for a net increase of business by writing new insurance, and was an amount equal to twenty times the net increase of his collectible weekly debit, that is, twenty times the amount

by which the sum of the weekly premiums on new policies issued during the week exceeded the sum of the weekly premiums on policies lapsed during the week. To determine these amounts recourse must be had to the agent's registers, which will require some explanation. When an agent is appointed he is given a book made up of sheets on the loose leaf system. On one side of the sheets are entered the policies which have been transferred to and accepted by him, that is, policies of insurance written by some other agent, but which the new agent is thereafter to take charge of and collect the weekly premiums thereon. This is called the life policy register. It contains the number and date of each policy, the name of the insured, his address and the amount of the weekly premium. The other side of the sheet is known as the lapse policy register. It contains the number of each lapsed policy, the date when lapsed, the name of the insured and the weekly premium. When new business is written by the agent, it is entered on the life policy register. When policies lapse for nonpayment of premiums, they are entered on the lapse policy register.

defendant to except to the trial judge's answers to the plaintiff's points (Knobeloch v. Pgh., H., B. & N. C. Ry.

Owing to the state of the record and the failure of the Co., 266 Pa. 140), we deem it necessary to discuss at length only two questions which arise out of the rulings of the trial judge. The first relates to the ordinary salary, the second to the special salary.

(1) The contract provided as follows: "I hereby agree......4. To send to the home office each week on the proper form a list of all policies upon which four weeks' premiums are due at the time of making up my account, and, will be held pecuniarily responsible for policies lapsed with arrears in excess of the limit provided by the company"; and "6. That on Monday of each week I am to be charged with the amount of the weekly premiums shown on the life policy register, less

the total amount of the weekly premiums on policies entered in the lapse policy register for that week; and it is agreed that the company is not bound to prove that I have received the premium from each particular policy-holder, but that the amount so shown shall be considered as being absolutely received by me on behalf of the company." The purpose of these clauses is not difficult to understand. The weekly collections on the policies were small amounts (as low as five cents), and were collectible by the agent at the homes of the insured. It would be practically impossible to check up the collections and see if they had all been reported by the agent to the company. Hence the clauses in the contract which made the agent responsible for all premiums on policies not lapsed remaining on the life policy register, whether collected or not, and which provided for his report to the company of all policies on which four weeks' premiums were due so that such policies might be lapsed. If the weekly premium is not actually paid and is returned on the register as "due" and this continues for four weeks and the policy is then reported to the company to be lapsed as provided in clause 4, the agent is entitled, by necessary implication under his contract, to credit for the four weeks' premium not collected by him, which default in payment resulted in the lapse of the policy. The learned trial judge, however, ruled that the plaintiff might prove that premiums charged against him on the life policy register for policies in force, and not lapsed, had not actually been collected by him and should not be chargeable against him. This was contrary to the express terms of the contract and was error. The seventh assignment of error is sustained.

(2) The provisions of the contract relative to the special salary are: "The agent will be paid a salary, as follows:......B. In addition to the amount specified under clause A, a 'special salary' of twenty times the net increase of his collectible weekly debit. In computing the said 'net increase' all lapses are charged against the

agent's account, except when the company, as an act of grace, notifies the agent to the contrary......The following rules relate to clause B:   E—The amount of the collectible weekly debit is arrived at by deducting the total amount of the weekly premiums on all policies entered in the lapse policy register from the total amount of the weekly premiums on all policies entered in the life policy register.   F—Should business of any description be transferred to the agent no special salary will be paid on the increase in his collectible weekly debit resulting from such transfer.   G—Should business of any description be transferred from the agent, the decrease in his collectible weekly debit resulting from such transfer, will not be charged against his special salary provided the business becomes chargeable to the agent to whom it is transferred."

The purpose of these provisions as to special salary is to encourage the agent to secure new business from responsible people and to keep in force the policies already issued.   If policies lapse, the agent is not entitled to any special salary on new business which he obtains until the premiums on such new business exceed the premiums on the lapsed policies, so that there has been a net increase in his collections.   As before pointed out, when the agent enters upon his work he is given a register containing policies in force which have been transferred from a former agent and which he may accept and become chargeable with.   If he so accepts, they become part of his life policy register and the premiums on them form a part of his collectible weekly debit as before described, and under the terms of the contract if any of these policies lapse he must secure new policies in equal amount of premium in their place before he can receive any special salary on new business.   Otherwise, the agent could neglect the collection of all premiums on policies transferred to him when he began business and let them lapse, and by devoting himself to new business alone would get a much larger compensation, though the

company might actually be receiving less premiums. The terms of the contract are clear. Notwithstanding, the learned trial judge ruled that in computing the special salary, "the company could not charge the plaintiff with policies that had lapsed which he himself did not secure." This was not in accordance with the contract. If the plaintiff accepted the transferred policies and they were entered on his life policy register, so that he was chargeable with the collection of their weekly premiums, they formed a part of his "collectible weekly debit," which he must first maintain in amount by premiums on new business before he can be allowed any special salary on additional new business. This construction does not result, as claimed by the appellee, in requiring the agent to pay the company twenty times the first premium collected by some other agent, in case such a transferred policy afterwards lapses. It only requires that in considering what is meant by "net increase of collectible debit," for the purpose of computing the agent's special salary of twenty times the first premium on such net increase, all policies on his life policy register, whether originally secured by him or transferred to and accepted by him from some other agent, which may lapse while the premiums thereon form a part of his collectible weekly debit, must first be replaced by new business of equal amount of premiums, and that he is entitled to such special salary only on new business obtained over and above such replacement. Of course if when the agent leaves the company's employ, any of his policies are transferred to and accepted by some other agent they must be counted as live policies in computing the special salary due him; and if any premiums overdue at the time of his leaving the service and which have been charged against his salary are afterwards collected by the company through another agent, he is entitled to the net credit of such collection. The sixth assignment of error is sustained.

With this disposition of the case the trial judge's rulings on the defendant's offers of evidence in sur-rebuttal become unimportant. No error was committed in refusing in evidence, during the cross-examination of the plaintiff, the defendant's exhibits, complained of in the first assignment. They were properly admissible only as part of the defendant's case. Nor was the defendant harmed by the ruling of the trial judge which forms the second assignment. The question, though ruled out by the judge, was answered by the witness and the answer was allowed to stand.

The judgment is reversed and a venire facias de novo is awarded.